UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | PLAINTIFF |
| | ) | |
| v. | ) | No. 4:16CR00170-01 SWW |
| | ) | |
| | ) | |
| ROY LEE BOLES JR. | ) | DEFENDANT |

## DEFENDANT'S MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE AND STATEMENTS

The Defendant, Roy Lee Boles Jr., by and through his attorney, Nicole Lybrand, respectfully moves to suppress any and all evidence obtained, directly or indirectly, as a result of the unlawful seizure of Mr. Boles on March 19, 2016.

In support of this motion, Mr. Boles states as follows:

### FACTUAL BACKGROUND

On March 19, 2016, at approximately 3:48 p.m., North Little Rock Police Officer Danny Haley—assisted by North Little Rock Police Officer Jeffrey Elenbaas—made contact with Roy Boles. Officer Haley allegedly initiated a traffic stop of a tan Buick for having a busted windshield but his report notes, "[t]he driver did not see me as he pulled off to the side of the road in front of some apartments in the area of Silver City Courts," thus it is unclear if this was a traffic stop or contact with occupants after the car was already stopped at its final destination. Andrew Perry was the driver of the vehicle and Mr. Boles was sitting in the front passenger seat.  According to Officer Haley, as he approached the

vehicle, he saw Mr. Boles lean over as if he was placing something under his seat.  Mr. Boles then exited the vehicle and Officer Haley ordered him to get back inside the vehicle.[1]

Officer Haley alleged that he could smell marijuana coming from the vehicle, and he observed a small amount of marijuana in the front passenger seat and marijuana shake in the driver's door handle and in the driver's lap.  Subsequently, Officer Haley ordered Mr. Perry out of the vehicle and asked him if he had been smoking marijuana.  Mr. Perry responded in the negative.  However, Mr. Perry allegedly told Officer Haley that his friends had been smoking marijuana.  Officer Haley performed a pat-down search of Mr. Perry.  During the search of Mr. Perry, Officer Haley recovered a small baggie of marijuana from Mr. Perry's front left pants pocket.

Officer Haley also alleged that, after searching Mr. Perry, he observed a small amount of marijuana attached to Mr. Boles's pants leg and between his legs where he was seated.  Officer Haley then ordered Mr. Boles out of the vehicle.  After both Mr. Perry and Mr. Boles were out of the vehicle, Officer Haley searched the vehicle.[2]

During the search of the vehicle, Officer Haley allegedly found a firearm underneath the passenger seat.  ACIC revealed that the firearm was stolen and Mr. Boles was a convicted felon.  Consequently, Mr. Perry and Mr. Boles were arrested and transported to the downtown substation.  Before Mr. Perry and Mr. Boles were transported downtown,

---

[1] According to Officer Elenbaas, Officer Elenbaas made contact with Mr. Boles and asked him for his identification. Mr. Boles told Officer Elenbaas that he did not have any identification because he had just finished playing basketball.
[2] According to Officer Elenbaas, Officer Haley advised him that he smelled marijuana coming from within the vehicle and saw marijuana shake within the vehicle.  Officer Haley then ordered Mr. Perry out of the vehicle and Officer Elenbaas ordered Mr. Boles out of the vehicle.   After Mr. Perry and Mr. Boles exited the vehicle, they sat on the back bumper of the vehicle.

Susan Bryant, Mr. Perry's mother, showed up at the arrest scene and officers allowed her to take possession of Mr. Perry's vehicle.

Approximately five months after Mr. Boles's arrest, a federal jury returned an indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1)

Mr. Boles contends that because the initial traffic stop was unlawful, any evidence obtained, directly or indirectly, as a result of the unlawful seizure—including Mr. Boles's alleged statements to Officer Haley—must be suppressed under the "fruit of the poisonous tree" doctrine.

## ARGUMENT

### I.    Officer Haley did not have probable cause to stop the vehicle.

The Fourth Amendment of the United States Constitution "prohibits 'unreasonable searches and seizures,' and 'stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth Amendment].' " *United States v. Prokupek*, 632 F.3d 460, 462 (8th Cir. 2011). *See also Brendlin v. California*, 551 U.S. 249, 257 (2007) (holding that a passenger of a vehicle that is pulled over for a traffic stop is seized, just as the driver is, "from the moment the driver's car [comes] to a halt on the side of the road.").

As a general matter, "a traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006).  "[A]ny traffic violation . . . provides an officer with probable cause to stop the driver." *Id.*  "Nevertheless, the police

must 'objectively ha[ve] a reasonable basis for believing that the driver has breached a traffic law.' " *Id.*

"If an officer makes a traffic stop on a mistake of law, the legal determination of whether probable cause or reasonable suspicion existed for the stop is judged by whether the mistake of law was an 'objectively reasonable one.' " *Id.* at 827. An officer's "subjective good faith belief about the content of the law is irrelevant[,]" because "officers have an obligation to understand the law that they are entrusted with enforcing, at least to a level that is objectively reasonable." *Id.*

Moreover, the government bears the burden of establishing that probable cause or reasonable suspicion existed to justify the traffic stop. *United States v. $45,000.00 in U.S. Currency*, 749 F.3d 709, 716 (8th Cir. 2014).

In *Washington*, 455 F.3d at 825, Officer Antoniak initiated a traffic stop on a 1993 Buick Regal that had a "horizontal crack in the windshield that went all the way across the windshield at about eye level with little spider veins that come off the main crack." Officer Antoniak testified that he stopped the vehicle because he believed that the crack constituted a "vision obstruction" under Nebraska law—Neb. Rev. Stat. § 60-6,256. *Id.* at 825-826. Officer Antoniak ran a data check on the driver which revealed that his license was suspended. Officer Antoniak handcuffed the driver and escorted the passenger, Washington, out of the car. *Id.* at 825. Officer Antoniak then searched the vehicle and discovered a firearm under the passenger seat. As Officer Antoniak questioned the driver about the firearm, Washington blurted out, "[I]t's mine and I carry it for protection." *Id.*

Washington was indicted for being a felon in possession of a firearm. *Id.* at 826.  He moved to suppress the firearm and his statements under the "fruit of the poisonous tree" doctrine, because they were obtained as a result of the unlawful traffic stop, "as no [Nebraska] statute or local ordinance prohibited driving with a cracked windshield." *Id.*  At the suppression hearing, Officer Antonaik testified that he initiated the traffic stop because of the cracked windshield, and "in his three and a half years as a police officer he had stopped some 100 cars for having cracked windshields." He further testified that "when he made such stops, he would issue a citation for 'vision obstruction' and agreed that in this case the cracked windshield was the only basis he had for stopping the Buick. *Id.*

Although the government conceded that Officer Antoniak made a mistake of law in believing that a cracked windshield violated Nebraska's vision obstruction statute, the magistrate judge concluded that Officer Antoniak's "mistake of law was objectively reasonable given his training and past experience and 'it is further reasonable to believe it would be a violation of traffic laws to operate a motor vehicle with a vision obstruction, be it a cracked windshield or a totally obliterated windshield.' " *Id.*  The district court adopted the magistrate judge's report and recommendation and denied Washington's motion to suppress. *Id.*     Following the denial of his suppression motion, Washington entered a conditional guilty plea reserving his right to appeal the district court's order. *Id.* at 825.

On appeal, the Eighth Circuit reversed the district court and held that it "erred in adopting the magistrate judge's conclusion that Officer Antoniak's mistake of law was objectively reasonable based on Antoniak's 'training and past experiences of prior traffic citation cases involving cracked windshields.' " *Id.* at 828.  The Eighth Circuit also held

that "[t]he district court erred in adopting the magistrate judge's statement that the mistake of law was objectively reasonable because it would be reasonable for an officer to believe that having a cracked windshield must violate some traffic law in Nebraska." *Id.* The Eighth Circuit explained that "officers cannot act upon misunderstandings of clear statutes or, worse yet, their own notions of what the law ought to be." *Id.*

Here, the only information available regarding the March 19, 2016 traffic stop comes from Officers Haley's and Elenbaas's incident reports. The incident reports alleged that Officer Haley initiated the traffic stop because the vehicle had a busted windshield.[3] That is all. Merely operating a vehicle with a busted windshield is not illegal under Arkansas law. The incident reports make no mention of what Arkansas law was allegedly violated to justify the seizure. Moreover, it appears that no citation was issued to Mr. Perry and his mother was allowed to retrieve and drive home in the vehicle at issue.

Officer Haley did not have probable cause or an objectively reasonable and articulable suspicion that a traffic violation had occurred to justify the traffic stop. Thus, Officer Haley's seizure of Mr. Perry's vehicle and its occupants—Mr. Perry and Mr. Boles—violated the Fourth Amendment. Accordingly, any and all evidence obtained as a result of the unlawful seizure must be suppressed under the "fruit of the poisonous tree" doctrine.

---

[3] The incident report makes no mention of the extent of the damage to the windshield.

**II.     Fruits of the unlawful traffic stop must be suppressed.**

"Under the 'fruit of the poisonous tree' doctrine, the exclusionary rule bars the admission of physical evidence and live witness testimony obtained directly or indirectly through the exploitation of police illegality." *United States v. Simpson*, 439 F.3d 490, 493-94 (8th Cir. 2006).

Thus, "the exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.' " *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011.  In addition, "[v]erbal statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search [or seizure]." *Id*. at 1079.

Here, the unlawful seizure led to the discovery of the marijuana and firearm and any subsequent statements.   Accordingly, this Court must suppress any and all evidence obtained, directly or indirectly, as a result of the unlawful seizure.

## CONCLUSION

For the foregoing reasons, Mr. Boles respectfully requests that this Court grant this Motion to Suppress, and grant him all other relief to which he is entitled.

Respectfully submitted,

JENNIFFER HORAN
FEDERAL DEFENDER

By:    /s/ Nicole Lybrand
        Bar Number 2010215
        Nicole Lybrand
        Assistant Federal Defender
        The Victory Building, Suite 490
        1401 West Capitol Avenue
        Little Rock, AR 72201
        (501) 324-6113
        E-mail: Nicole_Lybrand@fd.org

For:    Roy Lee Boles Jr., Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of January, 2017, a true and correct copy of the foregoing was mailed to the Defendant, and was electronically filed with the Clerk of the Court using the CM/ECF system, which shall send notification to the following:

Hunter Bridges
Assistant United States Attorney
U.S. Attorney's Office
Eastern District of Arkansas
P.O. Box 1229
Little Rock, AR 72203
E-mail: hunter.bridges@usdoj.gov

        /s/ Nicole Lybrand
        Nicole Lybrand